## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| THOMAS RANDLE, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> EXETER FINANCE LLC, <br><br> Defendant. | ) CASE NO. <br> ) <br> ) JUDGE <br> ) <br> ) **DEFENDANT EXETER FINANCE** <br> ) **LLC'S NOTICE OF REMOVAL TO** <br> ) **FEDERAL COURT** <br> ) <br> ) <br> ) |

Defendant Exeter Finance LLC ("Exeter") hereby removes to this Court the action more fully described below pursuant to 28 U.S.C. § 1446(a), the Class Action Fairness Act ("CAFA") (codified in scattered sections of 28 U.S.C., including 28 U.S.C. § 1332), and 28 U.S.C. § 1441(c) (federal question). Exeter submits the following in support of removal and this Court's jurisdiction:

**X.    FACTUAL BACKGROUND.**

1.  On May 21, 2023, Plaintiff Thomas Randle ("Plaintiff") purchased a used 2011 Hyundai Accent (the "Vehicle") from non-party Bedford Auto Wholesale ("Bedford Auto.") (Compl. at ¶ 17.)

2.  In order to finance the purchase of the Vehicle, Plaintiff executed a Retail Installment Contract (the "Contract") with Bedford Auto. (*Id*. at ¶¶ 17-18.)

3.  As outlined in the Contract, the finance charge was $12,654.16, the amount financed was $14,186.84, and the total sales price, which included the total cost of the purchase of the Vehicle and Plaintiff's down payment, totaled $27,541.00. (*Id*. at ¶ 19, Ex. 1.)

4. The Contract was then assigned to Exeter. (*Id*. at ¶ 20.)

5. According to Plaintiff, as a condition of financing the purchase of the Vehicle, Exeter transferred a check to Bedford Auto for less than the amount financed (the "Discount"). (*Id*. at ¶ 21, Ex. 2.)

6. Plaintiff then contends, in conclusory fashion, that Bedford Auto passed the cost of the Discount on to him by "raising the price of his [V]ehicle to recoup the discount." (*Id*. at ¶ 24.) This, according to Plaintiff, violates the Truth-in-Lending Act ("TILA") as well as Ohio law. (*Id*. at ¶¶ 12, 26-29.)

7. Based on the factual allegations in the Complaint (which are disputed), five of the claims are focused on Plaintiff's theory that Exeter either conspires with Bedford Auto and other Ohio automobile dealers, when dealers improperly increase the price of automobiles purchased on credit to offset the discount at which Exeter purchases their contracts, and then fail to disclose those increases as finance charges in the Contracts, which, according to Plaintiff, is "in violation of RISA and TILA." (*Id*. at ¶¶ 43-52.)

8. Plaintiff defines this class of people (the "**Usuriously Charged Class**") as all persons of Ohio who:

    a. purchased a motor vehicle primarily for personal, family and/or household use from the date of filing of this complaint until the date this class is certified;

    b. as part of that purchase transaction entered into a retail installment sales agreement with an Ohio dealership where the retail installment sales agreement was assigned to Exeter, and;

  c. where Exeter charged a discount or loan fee, and/or where the selling dealer raised the sales price of a vehicle to accommodate a discount or loan fee charged by Exeter, and;

  d. had the discount or loan fee been disclosed as a finance charge, the resulting APR would exceed 25%. (*Id*. at ¶ 66.)

9. Plaintiff asserts claims for: usury, civil racketeering, civil conspiracy, fraud, FTC Holder Rule liability on behalf of the Usuriously Charged Class. (*Id*. at pp. 13-17.)

10. Plaintiff subsequently defaulted on the Contract and on or around June 27, 2016, Exeter repossessed the Vehicle. (*Id*. at ¶ 30.)

11. Thereafter, Exeter sent Plaintiff a Notice of Reinstatement that, according to Plaintiff, violates R.C. §1317.12(C). (*Id*. at ¶¶ 32-36.)

12. Plaintiff defines the class of people allegedly harmed by this Notice of Reinstatement (the "**Notice of Reinstatement Class**") as all Ohio residents who:

  a. purchased a motor vehicle primarily for personal, family and/or household use from the date of filing of this complaint until the date this class is certified;

  b. as part of that purchase transaction entered into a retail installment sales agreement with an Ohio dealership where the retail installment sales agreement was assigned to Exeter;

  c. where Exeter repossessed their vehicles and sent the vehicle owner a Notice of Reinstatement; and,

  d. the Notice of Reinstatement included the full amount of the repossession charges in the amount demanded to reinstate the loan. (*Id*. at ¶ 67.)

13. Plaintiff asserts one claim for violation of R.C. § 1317.12 on behalf of the Notice of Reinstatement Class. (*Id*. at p. 13.)

14. Exeter then sent Plaintiff a Notice of Sale in June 2016. (*Id*. at ¶ 37.)

15. Plaintiff again contends that this violates Ohio law, R.C. §1317.16 and R.C. § 1309.614 because Exeter ultimately sold the Vehicle for less than the minimum bid price stated on the notice. (*Id*. at ¶¶ 39-41.)

16. Plaintiff likewise asserts this claim on behalf of a putative class (the "**RISA Notice of Sale Class**") which is defined as all Ohio residents who:

    a. purchased a motor vehicle primarily for personal, family and/or household use from the date of filing of this complaint until the date this class is certified;

    b. as part of that purchase transaction entered into a retail installment sales agreement with an Ohio dealership where the retail installment sales agreement was assigned to Exeter;

    c. where Exeter sent the debtor a Notice of Sale stating a minimum bid price;

    d. and subsequently sold the vehicle for less than that price. (*Id*. at ¶ 68.)

17. Plaintiff further contends that the Notice of Sale violates Ohio law, R.C. § 1309.614, because it fails to state the day of the week on which the sale is to take place. (*Id*. at ¶ 40.)

18. Plaintiff also asserts this claim on behalf of a putative class (the "**UCC Notice of Sale Class**") which is defined as all Ohio residents who:

  a. purchased a motor vehicle primarily for personal, family and/or household use from the date of filing of this complaint until the date this class is certified;

  b. as part of that purchase transaction entered into a retail installment sales agreement with an Ohio dealership where the retail installment sales agreement was assigned to Exeter;

  c. where Exeter repossessed their vehicles and sent, subsequent to the repossession and disposition, a Notice of Sale;

  d. where the Notice failed to state the day of the week of the sale. (*Id*. at ¶ 69.)

19. Plaintiff has now commenced this suit on behalf of himself and a putative class numbering "in the hundreds, if not thousands" and has asserted claims for: (1) violation of R.C. § 1317.061 (usury); (2) violation of R.C. § 2923.31 (civil racketeering); (3) civil conspiracy; (4) FTC Holder Rule – derivative liability; (5) fraud; (6) violation of R.C. § 1317.12; (7) violation of R.C. § 1309.610; and (8) violation of R.C. § 1309.610/614.

20. Plaintiff, on behalf of himself and those similarly situated seeks, among other things: (1) declaratory relief, (2) injunctive relief, (3) rescission of all contracts, (4) statutory damages pursuant to R.C. § 1309.625(C)(2), (5) actual damages, and (6) costs and attorney's fees, among other relief. (*Id*. at pp. 21-22.)

**XI.** **PROCEDURAL BACKGROUND.**

21. On May 21, 2024, Plaintiff commenced a civil action in the Cuyahoga County, Ohio Court of Common Pleas, captioned as *Randle v. Exeter Finance LLC*, Case No. CV 24 997786.[1] A copy of the Summons and Complaint is attached as Exhibit "**A**."

22. Exeter was served with the Summons and Complaint on May 29, 2024 and, therefore, this Notice of Removal is timely. *See* 28 U.S.C. § 1446(b).

23. Pursuant to 28 U.S.C. § 1441(a), venue is proper in the United States District Court for the Northern District of Ohio because this District embraces the Cuyahoga County Court of Common Pleas where the action was originally filed. *See* 28 U.S.C. § 129(a).

24. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiff and filed with the Cuyahoga County, Ohio Court of Common Pleas.

25. By removing the action to this Court, Exeter does not waive any defenses, objections or motions available to it under state or federal law. Exeter expressly reserves the right to require that Plaintiff's claims be decided through arbitration, if appropriate, and to move for dismissal of the Plaintiff's claims pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**XII. CAFA JURISDICTION EXISTS.**

---

[1] Plaintiff re-filed his claims after voluntarily dismissing the same in the case of *Jefferson Capital Systems, LLC v. Randle, et. al.*, Case Number CV-21-943963 in the Cuyahoga County Court of Common Pleas on May 17, 2024.

26. This Court has jurisdiction over this action under CAFA. Pursuant to CAFA, a district court has removal jurisdiction in cases in which the members of the proposed plaintiff classes in the aggregate are more than 100, and the aggregate claims of the class members exceed $5,000,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(d); *See Nessel ex rel. Mich. v. AmeriGas Partners, L.P.*, 954 F.3d 831, 834 (6th Cir. 2020). Additionally, under CAFA's minimal diversity standard, any member of the class of plaintiffs must be a citizen of a different state from any defendant. *Id*.

### a. The Putative Class Consists of More than 100 Members.

27. For removal under CAFA diversity jurisdiction, the proposed class must total more than 100 members. *See* 28 U.S.C. § 1332(d)(5)(B).

28. In the present case, Plaintiff has pled that the proposed class size "is in the hundreds, if not thousands." (Compl. at ¶ 70.)

29. Thus, by Plaintiff's own assertions in the Complaint, this case concerns a putative class action in which Plaintiff "seeks certification of a [] class . . . well in excess of the statutory minimum of one hundred putative class members." *Family Tacos, LLC v. Auto Owners Ins. Co.*, No. 5:20-CV-01922, 2021 WL 110797, at *2–3 (N.D. Ohio Jan. 12, 2021) (finding that defendant carried its burden to meet the jurisdictional threshold where plaintiff alleged that the nationwide class numbered "well in excess of the statutory minimum of one hundred putative class members"); *see also Attebery v. US Foods, Inc.*, No. 1:22-CV-1352 JLT BAM, 2024 WL 863795, at *4 (E.D. Cal. Feb. 28, 2024) ("Plaintiff contests Defendant's assertion that the class has more than 100 members, but Plaintiff has already admitted as much in the Complaint: 'Plaintiff is informed and believes that Defendants currently employ . . . approximately over 100 Non-Exempt Employees in California.'").

      **b.**    **Minimal Diversity of Citizenship Exists.**

30. Diversity jurisdiction under CAFA requires only minimal diversity. "Minimal diversity requires that 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'" *Adelstein v. Walmart, Inc.*, No. 1:23-CV-00067, 2023 WL 5607457, at *3 (N.D. Ohio Aug. 30, 2023) (quoting 28 U.S.C. § 1332(d)(2)(A)).

31. Plaintiff is a citizen of the state of Ohio. (Compl. at ¶ 1.)

32. Exeter is organized under the laws of Delaware and its principal place of business is in Texas. (Compl. at ¶ 5.) Exeter is a citizen of both Delaware and Texas, and has therefore demonstrated diversity under 28 U.S.C. § 1332(d)(5). *See Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698 (4th Cir. 2010) (limited liability corporation treated as "unincorporated business" under U.S.C. § 1332(d)(10)); *Hyman v. TV Guide Mag., LLC*, No. 15-cv-13769, 2017 WL 4405009 (E.D. Mich. Oct. 4, 2017) (same); *Eagles Nest, LLC v. Moy Toy, LLC*, No. 2:14-00010, 2014 WL 4655277 (M.D. Tenn. Sept. 16, 2014) (same).

      **c.**    **The Amount in Controversy Exceeds $5 Million.**

33. Pursuant to CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs." 28 U.S.C. § 1332(d)(6). *See also Klepper v. First Am. Bank*, 916 F.2d 337, 341 (6th Cir.1990) ("It is well established that claims can be aggregated to satisfy the jurisdictional amount requirement.")

34. The amount in controversy is determined from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect. *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir.2007). A defendant may rely on a fair reading of the allegations in plaintiff's complaint to demonstrate the amount in controversy. *See, e.g.*, *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir.2001); *Glazer v. Whirlpool Corp.*, Case No. 1:08-CV-1624, 2008 WL 4534131 (N.D. Ohio Oct. 6, 2008).

35. This is not an onerous burden. Indeed, the Supreme Court has made clear that, for CAFA removal, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Smith v. Nationwide Agribusiness Ins. Co.*, N.D. Ohio, No. 1:21-cv-2049, 2022 WL 109263, at *1 (Jan. 12, 2022) ("Where, as here, a plaintiff's complaint does not state the amount in controversy, the removal statute requires only a short and plain statement of the grounds for jurisdiction that need not contain evidence."). To satisfy this requirement, "[a] defendant is not required to 'research, state and prove the plaintiff's claim for damages' to a legal certainty." *Adelstein*, 2023 WL 5607457, at *3 (quoting *Hayes*, 266 F.3d at 572).

36. The amount in controversy can be determined by using Plaintiff's own calculations of his damages asserted in the Complaint which make clear here that Plaintiff's claims easily exceed the $5,000,000.00 threshold. *Norris v. People's Credit Co., Inc.*, N.D. Ohio No. 12CV3138, 2013 WL 5442273, at *3 (Sept. 27, 2013).

37. For instance, on behalf of the RISA Notice of Sale and UCC Notice of Sale classes, Plaintiff contends that under Ohio's U.C.C., R.C. § 1309.625(C)(2), he is entitled to statutory damages in the amount of the total amount of finance charges plus 10% of the principal amount borrowed. (Compl. at pp. 20-22.) For Plaintiff, that amounts to $12,654.16 (finance charge) plus $1,418.69 (10% of principal borrowed) for a total of **$14,072.85**.

38. Assuming that these putative classes number "in the hundreds," as Plaintiff claims, and assuming Plaintiff's damages are common and similar to the putative class (as alleged), a class of 200 members would bring the total statutory damages to **$2,814,570.00.**

39. Assuming these putative classes number "in the thousands" as Plaintiff claims, and assuming Plaintiff's damages are common and similar to the putative class (as alleged), a class of 2,000 class members would bring the total statutory damages to **$28,145,700**; well above the CAFA amount-in-controversy requirement. *See Family Tacos, LLC*, 2021 WL 110797, at *3 ("Aggregating the damages claimed on behalf of Plaintiff and all class members plausibly puts more than $5 million in controversy.")

40. Plaintiff also seeks rescission of his Contract as well as those of the putative class. (Compl. at p. 22.) This too can be used to calculate the amount-in-controversy under CAFA. *Norris*, 2013 WL 5442273, at *3.

41. For purposes of amount in controversy, the value of rescission of a retail installment contract is the total contract value, exclusive of finance charges. *Harris v. Gulf Stream Coach, Inc.*, 547 F. Supp. 2d 765, 770 (E.D. Mich. 2008) (citing *Harnden v. Jayco, Inc.*, 496 F.3d 579, 582 & n.1 (6th Cir. 2007)). The total contract value of Plaintiff's Contract exclusive of finance charges is **$14,886.84**. (Compl. at Ex. 1.)

42. Assuming that this putative class numbers "in the hundreds" as Plaintiff claims, and assuming Plaintiff's damages are common and similar to the putative class (as alleged), a class of 200 members would constitute rescission damages in the amount of **$2,977,368.00**, which, when combined with the estimated statutory damages Plaintiff seeks on behalf of a similar sized class (i.e., **$2,814,570.00**), easily meets CAFA's amount-in-controversy requirement. *Norris*, 2013 WL 5442273, at *3-4.

43. Alternatively, and assuming that this putative class numbers "in the thousands" as Plaintiff claims, and assuming Plaintiff's damages are common and similar to the putative class (as also alleged), a class of 2,000 class members would constitute rescission damages in the amount of **$29,773,680.00**.

44. Thus, on potential rescission damages and statutory damages alone, Plaintiff's Complaint "easily" meets the amount-in-controversy requirement for CAFA. *Norris*, 2013 WL 5442273, at *4.

45. Moreover, the amount of attorney's fees, punitive damages, and injunction-related costs Plaintiff might recover can be considered for purposes of CAFA's amount-in-controversy requirement. *See Brown v. Jackson Hewitt, Inc.*, No. 06-cv-2632, 2007 WL 642011, at *3 (N.D. Ohio Feb. 27, 2007) ("The starting point is that all three are to be considered in the amount-in-controversy calculation."); *Miller v. Volkswagen of Am., Inc.*, 889 F. Supp. 2d 980, 989 (N.D. Ohio 2012).

46. Here, once the Court factors in punitive damages, actual damages, and attorney's fees as claimed in Plaintiff's Complaint with the purported statutory and rescission damages alleged in Plaintiff's Complaint, the amount in controversy "is easily met." *Norris*, 2013 WL 5442273, at *4.

**XIII.　FEDERAL QUESTION JURISDICTION EXISTS.**

47.　In addition, this Court also has original federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 and the action may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441(b) as Plaintiff has attempted to avoid removal jurisdiction by artfully pleading around a claim under TILA.

48.　A civil action filed in a state court may be removed to federal court if the claim is one "arising under" federal law. 28 U.S.C. § 1441(b).

49.　The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13 (1936).

50.　However, there are exceptions to the well-pleaded complaint rule. One exception is the artful-pleading doctrine. Plaintiffs may not "avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981). Under the artful-pleading doctrine, a federal court will have jurisdiction if a plaintiff has carefully drafted the complaint so as to avoid naming a federal statute as the basis for the claim, and the claim is in fact based on a federal statute. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 22 (1983).

51. Thus, under the artful-pleading doctrine a district court has jurisdiction where a plaintiff brings state-law causes of action that "are truly federal-law claims in disguise." *Ohio ex. rel. Skaggs v. Brunner*, 549 F.3d 468, 475 (6th Cir. 2008). Moreover, and under Sixth Circuit precedent, while complete preemption is related to the artful-pleading exception, it is not required to be established for the artful-pleading exception to apply. *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 360-61 (6th Cir. 2015).

52. Such is the case here. Plaintiff concedes, as he must, that TILA governs the disclosures in the Contract he entered into with non-party Bedford Auto. (Compl. at ¶¶ 12, 47-51.) *See Cornist v. B.J.T. Auto Sales, Inc.*, 272 F.3d 322, 326 (6th Cir. 2001) (noting that retail installment sales contract disclosures were governed by TILA).

53. Indeed, TILA, 15 U.S.C. § 1601 *et. seq.*, "impose[s] mandatory disclosure requirements on institutions extending credit to consumers and control what charges flowing from a credit transaction may be charged to a borrower." *Gandy v. Peoples Bank & Tr. Co.*, 224 B.R. 340, 343-44 (Bankr. S.D. Miss. 1998); *See Vincent v. Money Store*, 736 F.3d 88, 105 (2d Cir. 2013).

54. Congress enacted TILA to "assure a meaningful disclosure of credit terms" and allow a consumer to "be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). The purpose of this is to ensure "meaningful disclosure of credit terms so that the consumer will be able to … avoid the uniformed use of credit…." 15 U.S.C. § 1601.

55. TILA requires an auto dealer[2] to disclose, *inter alia*, the (i) "amount financed," (ii) "finance charge," both as a dollar figure and an annual percentage rate, (iii) "total payments" equal to the sum of the amount financed and the finance charge, and (iv) "total sale price" of the vehicle, equal to the "cash price" of the vehicle, plus additional charges and the finance charge. 15 U.S.C. § 1638(a).

56. As well, a claim that a creditor increased the price of a vehicle solely because the buyer was purchasing it on credit to account for a purported discount is a "hidden finance charge" claim under TILA, not Ohio's Retail Installment Sales Act ("RISA"), R.C. § 1307.01 *et. seq*. *See, e.g.*, *Cornist*, 272 F.3d at 326 ("An increase in the base price of an automobile that is not charged to a cash customer, but is charged to a credit customer, solely because he is a credit customer, triggers TILA's disclosure requirements."); *Virachack v. Univ. Ford*, 259 F. Supp. 2d 1089, 1093 (S.D. Cal. 2003) (describing elements of "hidden finance charge" claim under TILA); *Walker v. Wallace Auto Sales, Inc.*, 155 F. 3d 927, 932 (7th Cir. 1998).

57. Plaintiff agrees as he alleges that the Discount allegedly charged by Exeter to accept assignment of his Contract "is accordingly a finance charge pursuant to RISA **and TILA**." (Compl. at ¶ 47.) (Emphasis added.)

---

[2] TILA's obligations extend only to "creditors." 15 U.S.C. § 1638(a). "TILA establishes a straightforward, objective inquiry for determining the identity of the creditor: it is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." *Vincent*, 736 F.3d at 106 (quoting 15 U.S.C. § 1602(g)); *see also Riviere v. Banner Chevrolet, Inc.*, 184 F.3d 457, 461 (5th Cir. 1999) (car dealer to whom loan obligation was initially payable was the sole creditor even though loan was immediately assigned to a finance company); *Mayfield v. Gen. Elec. Cap. Corp.*, No. 97 CIV. 2786(DAB), 1999 WL 182586, at *3 (S.D.N.Y. Mar. 31, 1999) (finance company assignee was not a "creditor" under TILA). The Complaint does not (and cannot) allege that Exeter is a "creditor" under TILA.

58. Plaintiff further contends that the failure by Exeter (and "its dealers") to disclose the Discount "is materially deceptive and misleading" and "in violation of RISA **and TILA**." (*Id*. at ¶ 51.) (Emphasis added.)

59. Therefore, removal under the artful-pleading doctrine of a claim that requires a court to construe TILA is proper. *Gandy*, 224 B.R. at 344; *Yousif v. Ocwen Mortg. Co., LLC*, 816 F. Supp. 2d 463 (E.D. Mich. 2010). *See also Kajitani v. Downey Sav. & Loan Ass'n, F.*A., 647 F. Supp. 2d 1208, 1219-20 (D. HI 2008)(finding that TILA preempted state law claims).

60. Similar to the claims in *Gandy*, and as the Complaint makes clear, Plaintiff's hidden finance charge claim(s) necessarily require this Court to construe and interpret TILA and, as a result, Plaintiff's Complaint is also removable under federal question jurisdiction pursuant to the artful pleading doctrine. *Id*.

XIV. **SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS.**

61. Because Plaintiff's remaining claims are part of the same case and controversy, this Court can exercise supplemental jurisdiction over them. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

62. Indeed, Plaintiff's remaining state law claims "form part of the same case or controversy" as the matters arising under this Court's original jurisdiction. 28 U.S.C. § 1367(a). This is because they derive from the same common nucleus of operative facts and/or arise from the same underlying contract, dispute, and transaction. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir. 2004) (internal citations and quotation marks omitted). *See also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350-51 (1988); *Capitol Park Ltd. Dividend Hous. Ass'n v. Jackson*, 202 F. App'x 873, 877 (6th Cir. 2006).

63. Therefore, supplemental jurisdiction over these claims is proper. *Id*.

64.  Exeter reserves the right to amend or supplement this Notice of Removal.

Respectfully submitted,

/s/ James W. Sandy
James W. Sandy (0084246)
McGlinchey Stafford
3401 Tuttle Rd, Ste 200
Cleveland, OH 44122
Telephone: (216) 378-9911
Facsimile: (216) 803-6945
jsandy@mcglinchey.com
*Counsel for Defendant Exeter Finance LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing **DEFENDANT EXETER FINANCE LLC'S NOTICE OF REMOVAL TO FEDERAL COURT** was served upon the following via electronic mail this 26th day of June 2024:

Ronald I. Frederick
Michael L. Berler
Frederick & Berler, LLC
767 E. 185th St.
Cleveland, OH 44119
Ronf@clevelandconsumerlaw.com
Mikeb@clevelandconsumerlaw.com
*Counsel for Plaintiff Thomas Randle*

/s/ James W. Sandy
James W. Sandy (0084246)

25679356.4